Keri **WILLIAMS**, Plaintiff,

v.

The **CITY OF MILAN, TENNESSEE, a Municipal Corporation, and Mayor Chris Crider, in his Individual and Official Capacities, Defendants.**

No. 1:08–cv–01235.

United States District Court,
W.D. Tennessee,
Eastern Division.

Sept. 15, 2009.

Charles Farmer and Teresa Luna of Jackson, TN, for plaintiff.

Michael Hill and Pam Vawter, for The City of Milan.

Dale Conder Jr., for Chris Crider.

ORDER GRANTING THE DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDMENT CLAIM AND DISMISSING WITHOUT PREJUDICE PLAINTIFF'S REMAINING STATE CLAIMS

J. DANIEL BREEN, District Judge.

Pending before the Court are several dispositive motions, including: Defendant Chris Crider's ("Crider") Motion to Dismiss Plaintiff's First Amendment Claim (Docket Entry ("D.E.") No. 45); Defendant City of Milan's (the "City") Motion to Dismiss Plaintiff's First Amendment Claim (D.E. No. 47); the City's Motion to Dismiss Plaintiff's Tennessee Human Rights Act Claim (D.E. No. 54); and the City's Motion for Summary Judgment (D.E. No. 59). Also before the Court is its earlier order in this case, dated April 8, 2009, Granting in Part and Holding in Abeyance in Part Defendant Crider's Motion for Partial Summary Judgment (D.E. No. 29). Plaintiff, Keri Williams, has responded to each of the abovementioned motions. For the reasons hereinafter stated, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiff's First Amendment Claim (D.E. No. 45 and 47) and **DENIES** as moot the portion of the City's Summary Judgment Motion (D.E. No. 59) pertaining to the First Amendment. The Court **DISMISSES WITHOUT PREJUDICE** all of Plaintiff's remaining state claims for lack of federal subject matter jurisdiction, including her THRA claim, the ruling on which the Court held in abeyance in its prior order (D.E. No. 29).

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff, Keri Williams ("Plaintiff" or "Williams") began working for the City in July of 1991. (D.E. No. 1, Complaint, at ¶ 6; D.E. No. 18, Exhibit A, Williams Affidavit, at ¶ 1.) Subsequently, the former Mayor of Milan, George Killebrew, appointed her to the office of City Recorder. (D.E. No. 1, Complaint, at ¶ 15.) Killebrew also wanted Williams to occupy the office of Municipal Court Clerk (the "Clerk" position), an elected position whose salary was one dollar per year. (*Id.*) Williams ran for the Clerk position in the general city election of November 2007 and was elected. (*Id.*; D.E. No. 18, Exhibit A, Williams Affidavit, at ¶ 4.) Plaintiff understood her resulting employment to be a "hybrid position" that represented the combination of her responsibilities as City Recorder and Clerk, and that "[p]art of the position [was] an appointment and the other part of the position require[d] an election." (D.E. No. 1, Complaint, ¶ 16; D.E. No. 18, Exhibit A, Williams Affidavit, at ¶¶ 6–7.) The current Mayor of Milan, Crider, terminated Williams from her City Recorder [1] position on September 12, 2008,

---

1. As Williams's Clerk position is one she holds pursuant to a general city election, it appears Crider would have been unable to terminate her as Clerk unilaterally; and in any event, none of the parties have indicated that Crider ever attempted to remove Williams from her Clerk position. (D.E. No. 18, Exhibit A, Williams Affidavit, ¶ 9.)

owing to what Crider called Plaintiff's "unsatisfactory job performance." (D.E. No. 1, Complaint, at ¶¶ 17–18.) At the time of her termination, Williams suspected that a man who had been visiting various offices and attending meetings at City Hall had been selected by Crider to replace her, but Crider never actually hired him to fill the vacant position. (D.E. No. 18, Exhibit A, Williams Affidavit, at ¶ 12.) Instead, he hired a woman, Julieanne Hart, to replace Williams as City Recorder after she filed suit against him. (D.E. No. 51, Personnel File of Julieanne Hart, p. 1.)

Williams brought the instant action on October 2, 2008. On November 17, 2008, Crider filed a Motion for Partial Summary Judgment,[2] seeking dismissal of several of Williams's claims, including those based upon the Tennessee Constitution, the Tennessee Human Rights Act ("THRA"), the Tennessee Public Protection Act ("TPPA"), the Public Employee Political Freedom Act ("PEPFA"), promissory estoppel, and the Due Process Clause of the Fourteenth Amendment. *Williams v. City of Milan, Tenn.*, 2009 WL 989775 at *1. The Court granted Crider's motion on all of Plaintiff's claims except the one under the THRA, holding that claim in abeyance in order to give Williams the opportunity to complete discovery. *Id.* at *8.

Crider later filed his Motion to Dismiss Williams's First Amendment Claim, which the City incorporated by reference in its Memorandum supporting its present Motion for Summary Judgment. (D.E. No. 59-2, City's Memorandum of Law in Support of its Motion for Summary Judgment, p. 17.) As such, the Court will consider both Crider's Motion and the City's Motion together as they relate to the Plaintiff's First Amendment claims.

## STANDARD OF REVIEW

### Motions to Dismiss

Rule 8(a)(2) of the Federal Rules of Civil Procedure instructs that a pleading should be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 12(b)(6) permits dismissal of a plaintiff's lawsuit when it fails to state a claim upon which relief can be granted. In order for an asserted cause of action to survive a motion to dismiss under Rule 12(b)(6), it need not necessarily be pleaded with "detailed factual allegations, [but must] provide the 'grounds' of [plaintiff's] 'entitle[ment] to relief' [with] more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action. . . ." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). Factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). . . ." *Id.* at 555–56, 127 S.Ct. 1955 (citations omitted). The key inquiry is whether the facts in the complaint set out "a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955; *see also Hagen v. U–Haul Co. of Tenn.,* 613 F.Supp.2d 986 (W.D.Tenn.2009) (discussing the "plausibility standard").

When considering a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint," and "a well-pleaded complaint may pro-

---

**2.** Crider's motion was styled a Motion to Dismiss and/or for Partial Summary Judgment. However, the Court noted in its Order that "[b]ecause the Defendant's motion relies on documentary evidence in addition to the pleadings, the Court will treat the motion as one for summary judgment under Rule 56," pursuant to *Fed.R.Civ.P. 12(d). Williams v. City of Milan, Tenn.,* No. 1:08–CV–01235, 2009 WL 989775, at *1 n. 1 (W.D.Tenn. April 8, 2009).

ceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted). Naturally, the type and specificity of the facts that must be pleaded to generate a plausible claim will vary depending on the elements of the cause of action asserted and the circumstances surrounding the litigation. *See United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 n. 6 (6th Cir.2008) (noting that the requirement to plead particular facts may be especially important in "cases likely to produce 'sprawling, costly, and hugely time-consuming' litigation"); *compare Twombly*, 550 U.S. at 564–69, 127 S.Ct. 1955 (conducting a Rule 12(b)(6) analysis in a case involving a wide-ranging antitrust conspiracy among local telephone and internet service providers brought under § 1 of the Sherman Act), *with Erickson*, 551 U.S. at 93–94, 127 S.Ct. 2197 (analyzing a prisoner's pro se § 1983 civil rights claim). As the Supreme Court has noted, "facial plausibility" is a "context-specific task," that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

## ANALYSIS

### The First Amendment and § 1983

■ Section 1983 imposes civil liability on every person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State" causes the "deprivation of any rights, privileges, or immunities secured by the Constitution or laws."

42 U.S.C. § 1983. To prevail on such a claim, a plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir.2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." *Humes v. Gilless*, 154 F.Supp.2d 1353, 1357 (W.D.Tenn.2001) (citing *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989)). "It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986).

■ When, as here, a plaintiff alleges that a government official has retaliated against her for exercising her First Amendment rights, the second element of the Section 1983 prima facie case—that the deprivation was caused by a person acting under color of state law—is further broken down into three sub-elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir.2003); *see also Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir.2005) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc)). Defendants, in their respective Motions to Dismiss, dispute the existence of the first element of this test—that the Plaintiff's speech was constitutionally pro-

tected—and thus, they assert that her First Amendment claim fails as a matter of law.[3] (D.E. No. 59–2, City's Memorandum of Law in Support of its Motion for Summary Judgment pp. 16–21; D.E. No. 45–2, Crider's Memorandum of Law in Support of his Motion to Dismiss, pp. 2–3.)

■ Specifically, the Defendants claim that Plaintiff's speech was not subject to First Amendment protection because she spoke pursuant to her official duties as City Recorder. (D.E. No. 59–2, City's Memorandum of Law in Support of its Motion for Summary Judgment pp. 16–19, 21–24; D.E. No. 45–2, Crider's Memorandum of Law in Support of his Motion to Dismiss, pp. 2–3.) As a result, the City argues, it is not liable under Section 1983 because there has been no violation of Plaintiff's constitutional rights (City's Memorandum, pp. 24–25). In addition, Crider contends that because he did not violate a clearly established constitutional right, he is entitled to qualified immunity. (D.E. No. 45–2, Crider's Memorandum of Law in Support of his Motion to Dismiss, p. 3.) To support their positions, the Defendants cite to the United States Supreme Court's opinion in *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), for the proposition that an employee's statements, if made pursuant to her official job responsibilities, do not qualify for First Amendment protection from employer discipline.[4] (D.E. No. 59–2, City's Memorandum of Law in

Support of its Motion for Summary Judgment pp. 16–19; D.E. No. 45–2, Crider's Memorandum of Law in Support of his Motion to Dismiss, pp. 2–3.)

In *Garcetti*, the Supreme Court clarified some of its precedent, stating that "the First Amendment protects a public employee's right ... to speak as a citizen addressing matters of public concern." 547 U.S. at 418, 126 S.Ct. 1951. The Court noted that the relevant inquiry, in light of its opinion in *Pickering v. Bd. of Ed. of Township High School Dist. 205*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) is "whether the employee spoke *as a citizen* on a matter of public concern." *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951 (emphasis added). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* When a citizen works for a government agency or entity, "the citizen by necessity must accept certain limitations on his or her freedom, but as long as an employee speaks in her capacity as a citizen about a matter of public concern, [she] must face only those speech restrictions that are necessary for [her] employer[ ] to operate efficiently and effectively." *Id.* at 418–19, 126 S.Ct. 1951. The point of this inquiry, then, is "both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their im-

**3.** Because of the relevant law on the subject of First Amendment retaliation and the specific allegations contained in the Complaint, the Court is able to dispose of Plaintiff's First Amendment violation as a matter of law, without reference to any exhibits, affidavits, or deposition testimony. Nonetheless, for purposes of setting forth all parties' arguments completely with respect to Williams's First Amendment claim, the Court will cite to all of the parties' memoranda that implicate this claim.

**4.** Alternatively, the Defendants contend that the *Elrod/Branti* exception renders unprotected Plaintiff's speech pursuant to the nature of her position as City Recorder (D.E. No. 59–2, City's Memorandum of Law in Support of its Motion for Summary Judgment, pp. 21–24). *See Rose v. Stephens*, 291 F.3d 917, 920–25 (6th Cir.2002). However, the Court need not reach this contention because the more recent *Garcetti* decision is more apposite to dispose of Plaintiff's First Amendment claim.

portant public functions." *Id.* at 420, 126 S.Ct. 1951. With that premise as a backdrop, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 126 S.Ct. 1951; *see also Haynes v. City of Circleville,* 474 F.3d 357, 364–65 (6th Cir.2007) (holding that, pursuant to *Garcetti,* plaintiff's speech made in the course of his official duties was "unprotected as a matter of law").

■ Thus, *Garcetti* and its Sixth Circuit progeny firmly establish that an employee's speech made pursuant to her official job responsibilities is not shielded under the First Amendment from action taken by an employer as a result of her statement. As the parties in *Garcetti* did not "dispute that [the plaintiff] wrote his disposition memo pursuant to his employment duties . . . [the Supreme Court] ha[d] no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Garcetti,* 547 U.S. at 424, 126 S.Ct. 1951. The Court of Appeals and various district courts in the Sixth Circuit have confronted this issue in the wake of *Garcetti,* and have issued several decisions attempting to delineate the boundaries of when an employee speaks pursuant to her official duties. Plaintiff has referred to many of these cases in her responses to the Defendants' motions. *See, e.g., See v. City of Elyria,* 502 F.3d 484 (6th Cir.2007); *Weisbarth v. Geauga Park District,* 499 F.3d 538 (6th Cir.2007); *Haynes v. City of Circleville,* 474 F.3d 357 (6th Cir.2007); *Bain–Silva v. Tenn. Dept. of Safety,* No. 3:08–CV–99, 2009 WL 1322869 (M.D.Tenn. May 8, 2009); and *Williams v. Luttrell,* No. 06–2777, 2007 WL 3236662 (W.D.Tenn. November 1, 2007).

However, none of the opinions to which Plaintiff has cited distinguishes *Garcetti*'s basic holding that an employee's communications pursuant to her official duties are unprotected as a matter of law; as a result, Plaintiff is unable to make out a prima facie case since her Complaint makes clear that she believed her alleged communications were required of the person working in the City Recorder position. Plaintiff attempts to categorize Sixth Circuit precedent into two groups, claiming, *inter alia,* that the cited precedent points to enhanced First Amendment protection for "the speech of whistleblowers reporting corruption and abuse of power, employees voluntarily speaking out, or employees proceeding outside the normal employment channels to voice their complaints." (D.E. No. 53, Plaintiff's Response to Crider's Motion to Dismiss Plaintiff's First Amendment Claim, p. 6.) Nevertheless, even to the extent that the authority Plaintiff cites does, in fact, indicate enhanced protection for whistleblowing activities, such authority is of no avail to Plaintiff in this case. The decisions to which Plaintiff refers primarily stand for the proposition that reporting corruption "is a matter of public interest." *Rich v. Gobble,* No. 1:08–CV–35, 2009 WL 801774, at *13 (E.D.Tenn. March 24, 2009). However, Defendants do not dispute that whistleblowing activities or reports of corruption, if proved, would be matters of public concern; rather, Defendants simply deny that Plaintiff spoke *as a citizen* (for First Amendment purposes) when she allegedly commented on a matter of public concern. (D.E. No. 59-2, City's Memorandum of Law in Support of its Motion for Summary Judgment, pp. 16–19; D.E. No. 45-2, Crider's Memorandum of Law in Support of his Motion to Dismiss, pp. 2–3); *see Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951 (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731).

Plaintiff also has cited several cases in which the parties disputed whether the claimant's speech occurred in the course of his or her official duties. In several of those decisions, the courts weighed several factors in deciding whether the employee's speech occurred outside his or her official job responsibilities. In most of the cited opinions, the determining factor was whether the plaintiff was engaging in some activity other than that which he or she was employed to do—such as reporting abuse to higher authorities. None of these cases, however, disputes the central point: a public-employee plaintiff whose official job responsibilities motivate her speech is bereft of First Amendment protection. Even Plaintiff's own Response to Crider's Motion to Dismiss contains the following in its discussion of one of the cases it cites:

> A white police officer who issued a press release alleging corruption and also that the chief of police discriminated against black officers *was not acting pursuant to his duties as a police officer.* His speech received First Amendment protection because *the officer was not doing [what] he was employed to do.*

(D.E. No. 53, Plaintiff's Response to Crider's Motion to Dismiss, p. 9) (emphasis added); *Miller v. City of Canton,* 319 Fed. Appx. 411 (6th Cir.2009). None of Plaintiff's citations distinguishes *Garcetti*'s holding—as applied by the Sixth Circuit—that when an employee does not speak in his capacity as a citizen, his speech as a matter of law, does not receive First Amendment protection. *Garcetti,* 547 U.S. at 418, 424, 126 S.Ct. 1951; *Haynes v. City of Circleville,* 474 F.3d 357, 364 (6th Cir. 2007). Thus, the Plaintiff's own discussion of the relevant case law supports the conclusion that an employee whose speech is motivated by her official job responsibilities receives no First Amendment protection from employer discipline. Despite her subsequent protestations to the contrary, Plaintiff's alleged speech falls into this category because her allegations of First Amendment retaliation make clear that she believed her "speech" to have been required due to her position as City Recorder.

Williams twice concedes in her Complaint that she spoke out against Mayor Crider because her job as City Recorder required her to do so. She concedes this with regard to both her communications with Crider and her whistleblowing communications to others. Paragraph 12 of the Complaint states, "Since the inception of Mayor Crider's administration, Plaintiff's job as City Recorder has placed her in the position of having to inform Mayor Crider of the illegality or impropriety of many of his actions." Likewise, she contends in Paragraph 29 of the Complaint that, "[d]ue to [her] duties as City Recorder, Plaintiff has spoken out in order to maintain the legality of the operations of the City of Milan." Williams, in her Responses to the various Motions filed by the Defendants, has attempted to argue belatedly that she did not believe her alleged whistleblowing communications to be within the ambit of her job as City Recorder, but the plain language of her Complaint unequivocally contradicts this assertion. As a result, pursuant to *Garcetti* and *Haynes,* Plaintiff's speech was unprotected as a matter of law, and therefore, her First Amendment claim fails.

As a result, her Complaint fails to set out "a claim to relief that is plausible on its face" with respect to the First Amendment. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Because Plaintiff has failed to establish that the City has deprived her of any constitutional right, her claim against the City under Section 1983 must fail. *Wittstock v. Mark A. Van Sile, Inc.,* 330 F.3d 899, 902 (6th Cir.2003), as must her claim against Crider as an individual, pur-

suant to *Saucier v. Katz*, 533 U.S. 194, 200–01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *as modified by Pearson v. Callahan*, — U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Therefore, the Court GRANTS each Defendant's Motion to Dismiss the Plaintiff's First Amendment Claim, and DENIES as moot the portion of the City's Motion for Summary Judgment as to the Plaintiff's First Amendment claim.

Having disposed of the Plaintiff's allegations under federal law, the Court now turns to her claims under state law. The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Absent any remaining federal claims against the Defendants, the Court, in its sound discretion, hereby DISMISSES WITHOUT PREJUDICE the Plaintiff's state law claims, including her THRA allegations.[5] *See Weeks v. Portage County Exec. Offices*, 235 F.3d 275, 279–80 (6th Cir.2000) (district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

## CONCLUSION

For the reasons hereinbefore stated, the Court **GRANTS** the Defendants' Motions to Dismiss the Plaintiff's First Amendment Claim (D.E. Nos. 45 and 47) and **DENIES**

as moot the portion of the City's Summary Judgment Motion (D.E. No. 59) pertaining to the First Amendment Claim. The Court **DISMISSES WITHOUT PREJUDICE** all of Plaintiff's remaining state claims for lack of federal subject matter jurisdiction, including her THRA claim, the ruling on which the Court held in abeyance in its prior order (D.E. No. 29).

---

5. Although the Court declines to exercise jurisdiction over Plaintiff's state law claims, there was a misstatement in one of its prior orders that required correction. In seeking to establish the requisite standard for causation in a PEPFA claim, both Plaintiff and Defendant City have cited to this Court's order in *Rowell v. Madison County*, No. 07–CV–1123, 2009 WL 1918078 (W.D.Tenn. July 2, 2009) to support conflicting legal positions. The Court since has discovered an error in footnote 20

of that order, which was responsible for the different interpretations to which the footnote and accompanying text were susceptible. The Court recently has amended the *Rowell* order to reflect the correct legal analysis, and the corrected versions now appear in both the Lexis and Westlaw databases at the same respective citations as before. *See Rowell*, 2009 U.S. Dist. LEXIS 57447 at *50–51, 2009 WL 1918078 at *15.