IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 12, 2010 Session

**KERI WILLIAMS**

**v.**

**THE CITY OF MILAN, TENNESSEE, AND
MAYOR CHRIS CRIDER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES**

An Interlocutory Appeal from the Chancery Court for Gibson County
No. R.D. 19072      George R. Ellis, Chancellor

_____

**No. W2010-00450-COA-R9-CV - Filed February 16, 2011**

_____

This appeal involves the transfer of a case from the chancery court to the circuit court. The plaintiff was terminated from her employment with the defendant municipality. She filed this lawsuit against the municipality for wrongful termination, seeking only unliquidated damages. The municipality filed a motion to transfer the case to circuit court, asserting that the chancery court did not have subject matter jurisdiction under Tennessee's Governmental Tort Liability Act and also based on Tennessee Code Annotated § 16-11-102, which addresses the chancery court's jurisdiction over claims for unliquidated damages. The chancery court denied the motion to transfer. The municipality now appeals. We reverse, concluding that once an objection to jurisdiction was made under Section 16-11-102, the chancery court was required to transfer the case to the circuit court.

**Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Chancery Court is
Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Michael R. Hill and Pamela G. Vawter, Milan, Tennessee, for the Defendants/Appellants The City of Milan, Tennessee, and Chris Crider in his official capacity; and Dale Conder, Jackson, Tennessee, for Chris Crider in his individual capacity

Charles H. Barnett and Teresa A. Luna, Jackson, Tennessee, for the Plaintiff/Appellee Keri Williams

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Keri Williams ("Ms. Williams") began working for the Defendant/Appellant City of Milan, Tennessee ("City"), in various capacities beginning in July 1991.[1]  In 2007, Ms. Williams was appointed to the position of City Recorder by the City Mayor.  She was simultaneously appointed to the position of Municipal Court Clerk.  To retain her position as Municipal Court Clerk, Ms. Williams had to be elected in an election scheduled for November 2007.  Ms. Williams ran in November 2007 and was elected as Municipal Court Clerk.  In this way, Ms. Williams came to hold the "hybrid position" of City Recorder and Municipal Court Clerk.  She received a normal salary as City Recorder, but received a salary as Municipal Court Clerk of only $1 per year.

In January 2008, Defendant/Appellant Chris Crider ("Mayor Crider") became the City's Mayor.  After Mayor Crider took office, Ms. Williams' complaint alleges, he took actions and made remarks indicating discriminatory intent.  Ms. Williams also asserts that, in her position as City Recorder, she witnessed or had knowledge of illegal or improper actions by Mayor Crider or others.  She alleges that she informed Mayor Crider of the illegality or impropriety of these actions, and reported them to other City officials as well.

In September 2008, Mayor Crider allegedly told Ms. Williams that her employment as City Recorder would be terminated, but first gave her the opportunity to resign.  At Mayor Crider's instruction, the acting City attorney brought Ms. Williams a proposed letter of resignation.  Ms. Williams declined to sign it.  Mayor Crider and his agents nevertheless announced publicly that Ms. Williams had resigned.  Ms. Williams' vacant position was filled by a male.

On October 2, 2008, Ms. Williams filed this lawsuit in the Gibson County Chancery Court against the City and against Mayor Crider in his official and individual capacities (collectively, "defendants").  The complaint alleged retaliatory discharge pursuant to the Tennessee Public Protection Act ("TPPA"), Tennessee Code Annotated § 50-1-304, and the Public Employee Political Freedom Act ("PEPFA"), Tennessee Code Annotated § 8-50-603, for reporting illegal and improper actions by Mayor Crider.  The complaint also alleged that the termination of Ms. Williams' employment was based on sex discrimination in violation of the Tennessee Human Rights Act ("THRA"), Tennessee Code Annotated § 4-21-101.  Finally, Ms. Williams claimed that she was wrongfully discharged based on a theory of

---

[1]Our recitation of the facts is taken from Ms. Williams' complaint and are not disputed for purposes of this appeal.

promissory estoppel. The complaint sought compensatory and punitive damages for the defendants' unlawful conduct, all unliquidated in nature.[2]

The City filed an answer denying Ms. Williams' allegations. In its answer, the City raised the following affirmative defense: "To the extent that . . . Plaintiff's claims are governed by the terms of the Tennessee Governmental Tort liability Act . . . exclusive jurisdiction of such claims is in the Circuit Court of Gibson County, Tennessee."

On November 4, 2009, the defendants filed a joint motion to dismiss or, alternatively, to transfer the case to the Circuit Court. The defendants argued that the Chancery Court did not have subject matter jurisdiction over the case based on the jurisdictional provision in Tennessee's Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated § 29-20-307, which provides: "The circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury . . . ." T.C.A. § 29-30-307. The defendants also based their motion on T.C.A. § 16-11-102(b),[3] arguing that the Chancery Court was without jurisdiction to hear Ms. Williams' claims because she sought only "unliquidated damages for injuries to person or character." On these bases, the defendants asked the Chancery Court to either dismiss the case for lack of subject matter jurisdiction or transfer it to the Gibson County Circuit Court.

Ms. Williams opposed the defendants' motion, claiming that jurisdiction was proper in the Chancery Court. She pointed out that Tennessee Code Annotated § 4-21-311(a) explicitly

---

[2]Ms. Williams also filed a claim in federal court based on the termination of her employment. On September 13, 2009, the federal district court dismissed Ms. Williams' federal claim and declined to exercise jurisdiction over her state-law claims. ***See Williams v. City of Milan***, 654 F. Supp. 2d 760, 767 (W.D. Tenn. 2009).

[3]That statute provides:

> (a) The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, *except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract*; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court, except in the cases excepted.
>
> (b) Any suit in the nature of the cases excepted in subsection (a) brought in the chancery court, *where objection has not been taken* by a plea to the jurisdiction, may be transferred to the circuit court of the county, or heard and determined by the chancery court upon the principles of a court of law.

T.C.A. § 16-11-102 (2009) (emphasis added).

grants the chancery courts concurrent jurisdiction with the circuit courts for claims brought under the THRA, which provides that a plaintiff who seeks recovery under the Act "shall have a civil cause of action in chancery court or circuit court." T.C.A. § 4-21-311(a) (2005). She argued that her claims were not governed by the GTLA; rather, they arose out of independent legislative enactments. In the alternative, she maintained that, even if the TPPA and the PEPFA claims were subject to transfer based on the jurisdictional provision of the GTLA, the Chancery Court should either retain jurisdiction over all of her claims based on pendent jurisdiction, or it should transfer only those claims covered by the GTLA and leave the remaining claims in the Chancery Court.

On December 16, 2009, the Chancery Court held a hearing on the defendants' motion. By the time of the hearing, the defendants' position had shifted slightly. The dropped their request for dismissal, and argued only that the case should be transferred to the Circuit Court, citing *Young v. Davis*, No. E2008-01974-COA-R3-CV, 2009 WL 3518162 (Tenn. Ct. App. Oct. 30, 2009). In *Young*, the plaintiff filed a lawsuit in the chancery court, asserting claims under the TPPA. The *Young* court held that the case should be transferred to circuit court because the plaintiff sought only unliquidated damages, and because the TPPA claim was subject to the jurisdictional provision in the GTLA. In response, Ms. Williams argued that the reasoning in *Young* was inapplicable, because the THRA specifically vests concurrent jurisdiction in the chancery and circuit courts.

At the conclusion of the hearing, the Chancery Court denied the defendants' motion to transfer because it was "persuaded that the *Young* case is not determinative in this case." On January 19, 2010, the Chancery Court entered an order consistent with its oral ruling, explaining

> The recent, unpublished case of *Young v. Davis* . . . is not controlling authority, and, therefore, *Young* is not determinative as to this Court's exercise of subject matter jurisdiction over the Plaintiff's claims against the City of Milan for damages under the [TPPA], the [PEPFA], the [THRA], and under the promissory estoppel doctrine.

The Chancery Court certified the order as a final order pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, so as to make it a final, appealable order.

Meanwhile, Ms. Williams sought to avoid the delay that would be caused by an appeal, so she agreed to transferring the case to the Gibson County Circuit Court. The parties submitted

a proposed consent order to this effect to the Chancery Court for approval, accompanied by a letter detailing the parties' reasons for jointly asking the chancellor to transfer the case. For reasons not apparent in the record, the Chancery Court declined to sign the consent order.[4]

In the wake of the Chancery Court's refusal to sign the proposed consent order, the defendants sought to appeal the January 19, 2010 order denying their motion to transfer, but were unsure whether to proceed with a direct appeal or seek an interlocutory appeal. Consequently, on February 17, 2010, out of an abundance of caution, the defendants filed with the Chancery Court both a notice of appeal pursuant to Rule 3 of the Tennessee Rules of Civil Procedure and a motion for permission to file an interlocutory appeal pursuant to Rule 9 of the Tennessee Rule of Appellate Procedure. On February 19, 2010, the Chancery Court entered an order granting permission for a Rule 9 interlocutory appeal.

On May 12, 2010, this Court dismissed the defendants' Rule 3 appeal, finding that the Chancery Court's order denying the motion to transfer was improvidently certified as a final, appealable order under Rule 54.02.[5] On the same day, this Court entered an order granting defendants permission for a Rule 9 interlocutory appeal.[6] We now consider the appeal pursuant to Rule 9.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the defendants argue that the Chancery Court erred in denying their motion to transfer because (1) the GTLA divests the Chancery Court of subject matter jurisdiction over

---

[4]The defendants apparently asked the Chancery Court to supplement the record on appeal to include a copy of the proposed consent order and the accompanying letter. The Chancery Court declined to include these items in the record.

[5]Rule 54.02 states in pertinent part:

> When more than one claim for relief is present in an action, . . . or when multiple parties are involved, the Court . . . may direct the entry of a final judgment *as to one or more but fewer than all of the claims or parties* . . . .

Tenn. R. Civ. P. 54.02 (emphasis added). Thus, the language of Rule 54.02 authorizes the trial court to direct the entry of a final judgment as one or more, but fewer than all, of the *parties*, or as to one or more, but fewer than all, of the *claims*. The order at issue in this case did not resolve any of the claims asserted; rather, it simply denied the defendants' motion to transfer the case. In such a situation, if the trial court wishes to enable the parties to appeal such an order before the case is completely resolved, a grant of permission to appeal under Rule 9 of the Tennessee Rules of Appellate Procedure is the appropriate vehicle.

[6]On June 18, 2010, the documents filed in connection with the Rule 3 appeal were consolidated with the record in this Rule 9 appeal.

some or all of Ms. Williams' claims, and (2) the Chancery Court was without jurisdiction to hear Ms. Williams' claims under Section 16-11-102(b), because she sought only unliquidated damages. Therefore, the defendants argue, the Chancery Court below was required to transfer some or all of Ms. Williams' claims to the Circuit Court. In response, Ms. Williams argues that her claims are not subject to the jurisdictional provision of the GTLA. She also contends that the THRA vests concurrent jurisdiction in chancery and circuit courts, and that jurisdiction is therefore proper in the Chancery Court even if she seeks only unliquidated damages.

The issues raised by the parties relate to the subject matter jurisdiction of the trial court . Issues regarding a court's subject matter jurisdiction are questions of law, which we review *de novo* on the record with no presumption of correctness. ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 729 (Tenn. 2000). Likewise, matters of statutory interpretation are questions of law. To the extent that the trial court's decision was based on its interpretation of the relevant statutes, we review the trial court's interpretation *de novo* with no presumption of correctness. ***See In re Angela E.***, 303 S.W.3d 240, 246 (Tenn. 2010).

### ANALYSIS

The defendants argue that the Chancery Court below erred in refusing to transfer the case to the Circuit Court, because the jurisdictional requirement in the GTLA, Section 29-20-307, divests the Chancery Court of jurisdiction over some or all of Ms. Williams' claims. In other words, the defendants assert that claims brought pursuant to the TPPA, the PEPFA, and the THRA are governed by the jurisdictional requirement of the GTLA, because the lawsuit is against a governmental entity and its employee. The defendants also assert that because the plaintiff seeks only unliquidated damages, the Chancery Court below was required to transfer the case to the Circuit Court once the defendants objected to its exercise of jurisdiction, under T.C.A. § 16-11-102(b). In support of both arguments, the defendants cite ***Young v. Davis***. The ***Young*** court relied on the Supreme Court's decision in ***Flowers v. Dyer County***, 830 S.W.2d 51 (Tenn. 1992). Therefore, we will review the ***Flowers*** decision and then consider ***Young***.

In ***Flowers***, the plaintiff filed a lawsuit in chancery court against the county pursuant to the GTLA, seeking unliquidated damages. The defendant filed a motion to dismiss for lack of subject matter jurisdiction based upon the exclusive jurisdiction provision of the GTLA, Section 29-20-307. The chancery court denied the motion to dismiss, finding that it had concurrent jurisdiction with the circuit court. The chancery court relied on Tennessee Code Annotated § 16-2-506(29)(A) which, in creating a chancery court for that district, granted it general concurrent jurisdiction with the circuit court in all matters over which the circuit court had jurisdiction. ***See*** T.C.A. § 16-2-506(29)(A)(ii) (2009). The intermediate appellate

court reversed, concluding that, although Section 16-2-506 granted general concurrent jurisdiction to the chancery and circuit courts, that statute did not affect the application of Section 16-11-102, which deprived chancery courts of jurisdiction over suits for unliquidated damages. Therefore, the intermediate appellate court held that the chancery court did not have jurisdiction, and the case was dismissed. *Flowers*, 830 S.W.2d at 52. The plaintiff then appealed to the Tennessee Supreme Court.

The Supreme Court in *Flowers* reversed the decisions of both the trial court and the intermediate appellate court. It held that, although the intermediate appellate court correctly concluded that the trial court did not have jurisdiction over the case, the case should have been transferred, not dismissed. The Court noted the portion of Section 16-11-102(b) stating that, although a chancery court does not have jurisdiction over a claim for unliquidated damages, it may nonetheless preside over such a case if "objection has not been taken" by the defendant. The *Flowers* Court inferred from this language "that where a jurisdictional objection has been made, such a transfer [to circuit court] is mandated." *Id.* at 53. Therefore, because the chancery court did not have subject matter jurisdiction over the case and the defendants objected, the chancery court was required to transfer the case to the circuit court pursuant to Section 16-11-102(b). The *Flowers* Court also observed that the jurisdictional provision in the GTLA constituted "a further limitation on chancery court jurisdiction." *Id.* Thus, the *Flowers* Court held that, because the plaintiff's claim was one for unliquidated damages, and because it was brought pursuant to the GTLA, the chancery court did not have jurisdiction, and it was required to transfer the case to the circuit court. *Id.*

As noted above, *Young* relied on the Supreme Court's decision in *Flowers.* In *Young*, the plaintiff was a county employee. After the plaintiff's employment was terminated, he filed a lawsuit in the chancery court against the county and its employees, asserting a retaliatory discharge claim pursuant to the TPPA as well as common law tort claims of retaliatory discharge and civil conspiracy. *Young*, 2009 WL 3518162, at *1. The defendants filed a motion to dismiss, arguing that all of the plaintiff's claims fell under the terms and provisions of the GTLA, particularly Section 29-20-307, and therefore the circuit court had exclusive, original jurisdiction over the case. The defendants also filed a motion for summary judgment on the merits of the case. The plaintiff then moved to transfer the case pursuant to Section 16-1-116, which permits a court without subject matter jurisdiction to transfer a case "in the

interest of justice."[7] The chancery court granted the motion for summary judgment in favor of the defendants on the merits, and the plaintiff appealed. *Id.* at *3.

On appeal, the intermediate appellate court in *Young* determined that the holding in *Flowers* was applicable. It then held that the application of *Flowers* required that the plaintiff's claims for retaliatory discharge under the TPPA and the common law be transferred from the chancery court to the circuit court. *Young*, 2009 WL 3518162, at *3-4 (citing *Woods v. MTC Mgmt.*, 967 S.W.2d 800 (Tenn. 1998)). The *Young* court acknowledged that there were differences, in that the *Flowers* lawsuit was based on the GTLA, while the claims in *Young* were brought pursuant to the TPPA and the common law. Nevertheless, regardless of the stated basis for relief, the *Young* court noted that "all the claims in the present case, as in *Flowers*, are for 'unliquidated damages for injury to person or character.'" *Id.* at *5 (quoting Section 16-11-102). In addition, the *Young* court held that the plaintiff's TPPA and common law claims were governed by the GTLA because they were "brought against a governmental entity or its employee." *Id.* at *6 (quoting Section 29-20-102(1)). The court stated that claims which satisfy the elements of the GTLA must be brought in compliance with the requirements of the GTLA, including its jurisdictional provision. *Id.* at *6-7. Thus, the court in *Young* held that the chancery court did not have subject matter jurisdiction over the plaintiff's TPPA and common law claims, and that the chancery court was required to transfer the case to the circuit court.

In this case, the Chancery Court below found that *Young* was not controlling authority because it was an unpublished decision, and also because it was unpersuasive and inapplicable. We agree with the Chancery Court that *Young* is, technically, not controlling

---

[7]That statute provides:

> Notwithstanding any other provision of law or rule of court to the contrary, when an original civil action, an appeal from the judgment of a court of general sessions, or a petition for review of a final decision in a contested case under the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, is filed in a state or county court of record or a general sessions court and such court determines that it lacks jurisdiction, the court shall, if it is in the interest of justice, transfer the action or appeal to any other such court in which the action or appeal could have been brought at the time it was originally filed. Upon such a transfer, the action or appeal shall proceed as if it had been originally filed in the court to which it is transferred on the date upon which it was actually filed in the court from which it was transferred.

T.C.A. § 16-1-116 (2009).

authority.[8]  Nevertheless, we find that it is highly persuasive and applicable to the facts in this case.  Moreover, we find that the holding in *Young* regarding claims for unliquidated damages was mandated by the Tennessee Supreme Court's holding and reasoning in *Flowers*, a published decision by our Supreme Court.  *See Flowers*, 830 S.W.2d at 52-53 (recognizing that, under Section 16-11-102(b), chancery courts do not have jurisdiction over claims "for unliquidated damages for injuries to person or character"); *see also Young*, 2009 WL 3518162, at *5.

Ms. Williams concedes that for all of her claims under the TPPA, the PEPFA, the THRA, and the common law, she seeks only unliquidated damages.  She argues, however, that the Chancery Court below is vested with jurisdiction over the THRA claim pursuant to Section 4-21-311(a), which grants concurrent jurisdiction to the chancery and circuit courts for THRA cases.  The instant case is distinguishable from *Young* and *Flowers*, she argues, because the relevant statutes in those cases did not include such a specific grant of jurisdiction to the chancery court.  Because the Chancery Court below has jurisdiction over her THRA claim, Mrs. Williams contends, the Chancery Court may exercise jurisdiction over all of her claims, or it may choose to transfer only the claims over which it does not have jurisdiction.  Regardless, she argues, the Chancery Court was not required to transfer her claim brought pursuant to the THRA.  Ms. Williams cites no caselaw in support of this argument.

We must conclude that Ms. Williams' argument is contrary to the Supreme Court's reasoning in *Flowers*.  In *Flowers*, the Supreme Court held that the specific grant of concurrent jurisdiction to chancery courts in Dyer County did not nullify the limitation in Section 16-11-102(a) regarding unliquidated damages.  In reaching this conclusion, the Supreme Court stated that, in granting concurrent jurisdiction to the chancery court in Section 16-2-506(29), the legislature did not intend "to give the chancery court of Dyer County unbridled discretion to hear cases involving unliquidated damages, so as to confer upon it an authority beyond that of every other chancery court in the State."  *Flowers*, 830 S.W.2d at 53.

In this case, Section 4-21-311(a) of the THRA specifically grants concurrent jurisdiction to both the chancery and circuit courts for claims under the Act.  As in *Flowers*, we must find that this grant of concurrent jurisdiction is circumscribed by the jurisdictional parameters for

---

[8]Tennessee Supreme Court Rule 4(G)(1) states in pertinent part: "An unpublished opinion shall be considered controlling authority between the parties to the case. . . . Unless designated 'Not For Citation,' 'DCRO' or 'DNP' pursuant to subsection (F) of this Rule, unpublished opinions for all other purposes shall be considered persuasive authority."  Although the distinction between "published" and "unpublished" decisions seems of greatly diminished value in an age when both published and unpublished opinions are equally accessible through online legal research, which is now the primary mode of legal research, we, of course, defer to Rule 4(G)(1) as a duly adopted rule of our Supreme Court.

chancery courts set forth in Section 16-11-102. Ms. Williams concedes that she seeks only unliquidated damages in all of her claims in this case. Consequently, under *Flowers* and *Young*, we respectfully conclude that the Chancery Court below was required to transfer Ms. Williams' case, including the THRA claims, to the Circuit Court, pursuant to Section 16-11-102(b). *Flowers*, 830 S.W.2d at 53; *Young*, 2009 WL 3518162 at *5. We therefore reverse the decision of the Chancery Court and remand for entry of an order transferring the case to the Gibson County Circuit Court.

This holding pretermits the issues raised under the GTLA and all other issues not specifically addressed herein.

### CONCLUSION

The decision of the Chancery Court is reversed, and the cause is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Appellee Keri Williams, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE